[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-14069
Non-Argument Calendar

_____

D.C. Docket No. 8:19-cv-01818-TGW

LISA TURNER,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 8, 2021)

Before JILL PRYOR, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

The Social Security Commissioner found that Lisa Turner was disabled starting on April 6, 2015.  Turner appealed that decision because she believes her disability started even earlier.  The district court did not find any error in the Commissioner's decision.  Neither do we, so we affirm.

I.

Turner applied for disability benefits in July 2012, and alleged that her disability began on May 27, 2011.  In that application, she claimed to suffer from lupus, fibromyalgia, diabetes, sleep apnea, possible glaucoma, and other maladies.  That application was denied initially and upon reconsideration.  She requested a disability hearing, which was held in June 2015, and there she agreed to amend her alleged disability onset date to November 10, 2014.  The ALJ found that she was disabled.

But Turner thought that her disability started much earlier than 2014.  She appealed, and made it to the district court—at which point the Commissioner requested the district court to reverse and remand, so that Turner could be informed about how amending her disability onset date would affect her claims.  The magistrate judge granted the motion, and the case made its way back to the ALJ.

Another hearing was held in May 2018.  There, the ALJ listened to testimony from Dr. Hema Sugumaran, who reviewed the medical record and said that the first date in which she found a decrease in Turner's vision such that he had some limitations was April 6, 2015.  That was the date of a letter from Dr. Don J. Perez, which said that Turner's "visual acuity is 20/70 in the right eye and 20/80 in

2

the left eye," and that "[h]er peripheral vision is very poor." The ALJ then questioned a vocational expert, and posited a hypothetical person of Turner's "age, education and work experience" who was limited "to jobs requiring only near field acuity, near acuity, frequent near acuity, occasional peripheral acuity and frequent depth perception." The VE testified that such a person would be able to work as a toll collector, price marker, and ticket taker. The ALJ next asked about potential jobs for a hypothetical person who was limited to jobs requiring "no near acuity, no peripheral acuity and no depth perception." The VE responded that the options for such a person were extremely limited.

The ALJ issued a decision finding that Turner's disability began on April 6, 2015. The ALJ found that before that date Turner was able to "perform work requiring frequent near visual acuity; occasional peripheral visual acuity and frequent depth perception." But after that date, the ALJ found that Turner "could perform no work requiring visual acuity; peripheral visual acuity or depth perception." Particularly important to the ALJ's finding was that Dr. Perez's "letter marks the first evidence supporting the visual limitations set forth after the established onset date." The administrative appeals judge left that decision in place.

Turner filed an appeal in district court, where both she and the Commissioner consented to a magistrate judge's authority. There, the Commissioner's decision was affirmed. The magistrate judge found that substantial evidence supported the ALJ's decision, and that Dr. Perez's letter was reasonably interpreted by the ALJ as describing Turner's current condition—and

3

not her condition before the day the letter was written (that is, April 6, 2015). The magistrate judge also found that Turner failed to point to medical evidence that her vision was worse than the ALJ found it to be prior to April 6, 2015.

Turner now appeals to this Court.

## II.

"Our review of the Commissioner's decision is limited to whether substantial evidence supports the decision and whether the correct legal standards were applied." *Walker v. Soc. Sec. Admin., Comm'r*, 987 F.3d 1333, 1338 (11th Cir. 2021). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)). And when there is substantial evidence to support the decision, we must affirm "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision." *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). We afford no deference to the district court's decision. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1358 (11th Cir. 2018).

## III.

On appeal, Turner "posits that the substantial evidence does not support the Administrative Law Judge's visual limitation findings." In support of that argument, she points to Dr. Perez's letter, reports of consultative examiner, and her own testimony. Turner also makes two more specific arguments. *First*, she contends that the ALJ erred when it did not read Dr. Perez's letter to be evaluating Turner's visual limitations before April 6, 2015 rather than as of that date. *Second*,

4

she claims that the ALJ's use of terms such as "frequent near visual acuity" is "nonsensical." After all, in her view, a person "cannot read a particular line 1/3 to 2/3 of the time, but not the remaining time." We address these arguments in turn.

As an initial matter, we find that substantial evidence supports the ALJ's finding that Turner was able to "perform work requiring frequent near visual acuity; occasional peripheral visual acuity and frequent depth perception" before April 6, 2015. The ALJ placed "great weigh[t]" to the opinion of Dr. Sugumaran, who had reviewed Turner's records, and noted that she is a "well qualified vision specialist" who "reviewed all the evidence available." The ALJ also gave "great weight" to Dr. Perez's letter, taking into account that "[a]s a treating specialist, Dr. Perez is qualified to issue an opinion on the claimant's condition."

To the extent Turner tries to show otherwise in her initial brief, she is unsuccessful. As her brief admits, the consultative examiner who noted "visual changes" did so "without quantifying the degree." And while Turner's brief refers to her own testimony that "her vision started getting really bad in 2012," that testimony was not ignored by the ALJ. In fact, the ALJ stated that the "residual functional capacity reflects some visual limitations," and that "these are based largely on the claimant's testimony that her visual impairment extended" to the period before April 6, 2015. But that does not establish that Turner was disabled before that date, and none of her arguments or proffered evidence suggests that the ALJ's decision was supported by anything less than a reasonable person would accept as adequate. *Walker*, 987 F.3d at 1338.

Turner also argues that the ALJ committed a "clear and unmistakable error" in how he read Dr. Perez's letter.  According to Turner, Dr. Perez's letter should be read to be referring to the state of Turner's vision before April 6, 2015.  We disagree.  Dr. Perez's letter is dated April 6, 2015, and it says that Turner's "visual acuity *is* 20/70 in the right eye and 20/80 in the left eye," and that her "peripheral vision *is* very poor."  Reading the letter according to its plain language is not error at all, let alone a "clear and unmistakable" one.

Finally, Turner characterizes the ALJ's usage of the word "frequent" as "nonsensical."  It was not.  The ALJ's use of the word "frequent" was with regard to "*work* requiring frequent near visual acuity; occasional peripheral visual acuity and frequent depth perception."  And applying the term "frequent" to near acuity for describing job requirements is a part of the Dictionary of Occupational Titles.  *See, e.g.*, U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991) (DOT) § 239.367-026.  And of course, the ALJ may take notice of the DOT.  20 C.F.R. § 416.966(d)(1).  Turner raises no controlling law to suggest that the ALJ erred when it found that, at one point, Turner was able to perform "work requiring frequent near visual acuity."

**AFFIRMED.**